

**FILED**

**11:34 am, 6/18/24**

**Margaret Botkins**
**Clerk of Court**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

---

UNITED STATES OF AMERICA,

        Plaintiff,

VS.

THOMAS D. MANGELSEN,

        Defendant,

Case No.  L:23-PO-00877-KHR-1

---

## VERDICT

**THIS MATTER** comes before the Court upon a violation notice issued to Defendant Thomas D. Mangelsen on October 9, 2023, within the boundaries of Grand Teton National Park ("GTNP"). [Doc. 1]. The violation notice charged Defendant with a violation of obstruction of traffic in violation of 23 C.F.R. § 4.13(b). *Id.* A bench trial was held on May 31, 2024. [Doc. 17]. The Court FINDS as follows:

### BACKGROUND AND TRIAL

Section 4.13(b), Title 23 of the Code of Federal Regulations, reads in relevant part:

The following are prohibited:
* * *
(b) Operating a vehicle so slowly as to interfere with the normal flow of traffic.

Defendant appeared before the Court, with counsel, on December 19, 2023, and entered his plea of "not guilty" to the charge of obstruction of traffic. A bench trial was later set to occur on May 31, 2024.

The parties were present for the trial, which convened at 8:30 a.m. on May 31, 2024, in Jackson, Wyoming, before the Honorable Mark L. Carman. The government was represented by Assistant United States Attorney Ariel Calmes and Defendant appeared with his attorney, Edward Bushnell. A preliminary motion was made to exclude witnesses, which was granted. Following opening statements,[1] the United States called two witnesses to testify: Tyler Brasington, a bear management specialist with GTNP, and law enforcement ranger Bret Timm. Upon the government resting, Defendant moved for a judgment of acquittal, which was denied. Defendant called two witnesses: Thomas Mangelsen and his employed assistant, Tiffany Talbot.

Following closing arguments, the Court took the matter under advisement, to allow it to review in full the videos which were introduced into the record. It was subsequently learned that the equipment which was utilized to record the proceedings had malfunctioned and there is no audio recording of the testimony presented during the trial.

The parties do not contest most of the facts; the exception being whether Defendant obstructed traffic. Grizzly bear #610 is well-known within the GTNP environs and beyond, enjoying notoriety both on her own and as the daughter of grizzly bear # 399. Both of these bears are photographed, monitored, blogged, and followed extensively by a dedicated band

---

[1] The United States waived their opening statement.

2

of grizzly watchers, not to mention actual bear experts and the GTNP itself. Defendant is a well-known photographer who, in addition, has published what he referred to as "coffee table books" about the bears of GTNP, including one about grizzly bear # 399. He has commercial photo galleries in Jackson, Wyoming and Park City, Utah, and recently closed a gallery in California. In addition, he testified that he is active in conservation activities with an emphasis on grizzly bears. He also recently released a documentary film focused on grizzly bear # 610, which was the bear at the heart of this occurrence.

On the afternoon of October 9, 2023, GTNP received a report that a grizzly bear had been struck by a vehicle on Highway 26, near the east entrance to GTNP. Tyler Brasington responded to the scene as the on-duty bear specialist. Mr. Brasington is not a law enforcement officer and he drove to the location in a vehicle that did not have decals identifying it as a Park Service unit, but which did have a light bar on the roof. Mr. Brasington located the potentially injured bear near some skid marks on the highway. The bear was laying down about 15 yards off the side of the roadway and was believed by Mr. Brasington to be injured. The bear was believed at the time to be grizzly bear # 610, who was known to have three yearling cubs in company.[2] The cubs were not observed.

Mr. Brasington testified the speed limit in that section of the highway was 55 mph in the daytime. In Mr. Brasington's opinion, most of the traffic was traveling at a reasonable speed and he considered 45 mph to be reasonable, considering his vehicle parked on the side of the highway. If a vehicle slowed down excessively, he would gesture or speak to

---

[2] All parties agree that the bear was in fact grizzly bear # 610, and she will be so referred to hereinafter.

the operator to move on. In this manner, he was able to prevent a "bear jam." Mr. Brasington explained that GTNP does not "manage" bear jams on this section of Highway 26. He further explained that, in other areas of GTNP, they work to control viewing opportunities for the public, which includes allowing vehicles to stop or drive slowly when possible. Due to the nature of the traffic on Highway 26, including substantial commercial traffic, they do everything within their power to prevent bear jams, which could lead to serious safety risks. Mr. Brasington testified that this was a very concerning situation, considering the proximity of a potentially injured and dangerous bear so close to the highway, and her cubs' location unknown. To assist Mr. Brasington, at least one law enforcement ranger was dispatched to the scene.

While performing this function, and maintaining contact with the potentially injured bear, Mr. Brasington observed Defendant drive by repeatedly at a very slow rate of speed—estimated at 5 mph—or what Mr. Brasington described as walking speed. In Mr. Brasington's opinion, this created a safety risk and he gestured and verbally directed Defendant to move on. Defendant did not testify that he observed or heard these instructions. Mr. Brasington is very familiar with Defendant, as the latter is a frequent visitor to bear sightings and a very well-known and respected nature photographer. They have spoken on a number of occasions and Mr. Brasington praised Defendant's skills.

Mr. Brasington observed Defendant drive by at least four times,[3] at a very slow rate of speed, with a minimum of one vehicle and a maximum of four vehicles required to drive

---

[3] Mr. Brasington testified that he stopped counting after the fourth drive-by.

very slowly behind Defendant's vehicle. At one point, Defendant pulled over to the side of the highway and stopped about 100 yards from Mr. Brasington. The latter then called for assistance from Ranger Timm, and Defendant immediately pulled back out onto the highway. Defendant had a radio that allowed him to monitor GTNP radio traffic.

Following this event, Defendant drove to a driveway—which the Court assumes was the Pony Ranch road—and executed a reversal and drove back towards Mr. Brasington. Mr. Brasington was distracted, as grizzly bear # 610 was becoming more active and the yearling cubs had appeared and entered the highway. Defendant stopped short of Mr. Brasington's vehicle, as the roadway was blocked by the cubs and Mr. Brasington in the roadway.

At this point in time, Ranger Timm arrived and made contact with Defendant. The contact between Ranger Timm and Defendant was recorded on the former's body camera. Defendant also recorded portions of the contact, but no such video was offered or introduced.

Ranger Timm issued the above-referenced Violation Notice to Defendant. Ranger Timm is an experienced ranger with 26 years in the National Park Service and has been in GTNP since 2020. Ranger Timm was not familiar with Defendant, but thought he seemed vaguely familiar and questioned Defendant when he made contact in that regard. Ranger Timm was not aware of previous interactions Defendant had with GTNP rangers prior informing Defendant that he was being cited for obstruction of traffic. Defendant confirmed that he was not previously familiar with Ranger Timm.

Ranger Timm observed Defendant make U-turns in the pull-out located to the east of grizzly bear #610. He observed Defendant drive slowly with vehicles forced to slow down to follow him. Ranger Timm could not see all the way to Mr. Brasington's location due to a curve in the road. Ranger Timm was involved in meeting with drivers in the turn out and telling them not to drive slowly or stop their vehicles and explaining the importance of keeping the traffic moving. This is documented on his body camera. It was during the process that Ranger Timm observed Defendant's driving activities. While performing this function Ranger Timm received two calls requesting assistance from Ranger Brasington requesting assistance.

The defense called two witnesses to testify. Defendant testified regarding the events. He denied obstructing traffic but did testify that he drove lower than the speed limit and drove repeatedly pass the location. He drove by two or three times before he saw the bear and he thought he made a total of five passes. He does not recall traffic behind him but is sure there were never four cars backed up behind him. He further testified that he believed driving slowly would be safer for the bear(s) and his intention in driving slow was for the protection of the bear(s). Defendant testified regarding an incident which occurred a number of years ago where charges against him were dismissed where he was told by Mr. Brasington that Defendant was helping control the situation by driving slowly back and forth through a bear jam. Finally, Defendant testified to his advocacy on behalf of the bears and wildlife in the Yellowstone/Grand Teton ecosystem.

Defendant called Tracy Talbott, who works for Defendant. She traveled to the scene and arrived after the events related above. When she arrived, bear #610 had returned to the

side of the road and a video she shot shows a bear jam developing with cars slowed and stopped at the location of the bear. While she was there a GTNP volunteer who manages bear encounters arrived and she observed the emergency lights of approaching GTNP rangers.

## DISCUSSION

Defendant argues that he did not interfere with the normal flow of traffic as he did not cause traffic to back up and that the normal flow of traffic at a bear jam is very slow.

An understanding of the events of October 9, 2023, is greatly aided by the video recordings. The recording from Ranger Timm's body camera starts while the Ranger is interacting with other persons he suspects are driving back and forth by the bear and potentially obstructing traffic. The first vehicle shown is a white van, during which he has a further encounter with a passenger in a Jeep. During Ranger Timm's interaction with those drivers, a substantial amount of traffic can be heard to pass by the locations at highway speeds. At approximately 23:08:36, a call is heard from Mr. Brasington on Ranger Timm's radio that a vehicle has stopped. This corresponds to Mr. Brasington's testimony that Defendant pulled over and stopped in the general area of the bear and upon Mr. Brasington's radio call pulling back out onto the roadway. At 23:08:55, Ranger Timm radioed that he would be there shortly. At 23:08:59, Mr. Brasington radioed a description of the vehicle, black Expedition, and a license number, both of with were later confirmed to match Defendant's vehicle. Ranger Timm continued to speak with the driver of the van until Mr. Brasington made another call that he needed immediate help and appeared to state that all the cubs were in the road. Ranger Timm broke off his conversation with the white

van and drove to Mr. Brasington's location where he pulled in front of Defendant's vehicle which was stopped for the bear cubs in the roadway. The contact with Defendant started at 23:12:10, at which point Ranger Timm asked for documents and advised Defendant that he had been obstructing traffic. During the conversation, cars can be heard passing and Ranger Timm is telling Defendant that they will discuss further after they get off the roadway.

During the trial, Ranger Timm was challenged by defense counsel as to what he was able to observe since the body camera video did not show that he turned in a way that would allow him to see events on the roadway. During this portion of the video, you can see by Ranger Timm's reflection on the side of the vehicle that he is looking around a great deal, but the camera does not reflect his movement. This supports the Ranger's testimony that he observed Defendant's driving action while in conversation with other drivers.

At 23:13:50, Ranger Timm leaves Defendant's vehicle and drives the short distance to Mr. Brasington's location. Mr. Brasington relates his observations of Defendant driving 5 to 10 mph, with four cars behind him. They then discussed when Defendant pulled over to stop and drove off after radio call. Ranger Timm noted that he saw Defendant driving slowly with vehicles behind him but did not see him turn around after stopping at Brasington's location. Mr. Brasington told Ranger Timm that he turned around in a driveway, which was described as the Pony Ranch road, and did not drive all the way to Ranger Timm's location at the east pullout. Other than providing Defendant's name, there was no discussion regarding any prior history or problems with Defendant.

8

Ranger Timm's second contact with Defendant begins at 23:17:11 and commences with Ranger Timm asking how he knows Defendant. After some conversation, it appears that neither has any recollection of prior contact. Ranger Timm relates what he observed and was told, including seeing Defendant slow down to 10 to 15 mph with four cars backed up behind him. Defendant said he "went slow" but denied stopping. *See* 23:19:35. After additional conversation, Defendant stated: "I was driving really slowly because was caring about the bear." *See* 23:19:43. Ranger Timm issued the ticket and Defendant then stated later that he was driving 3 to 4 mph to make sure cubs did not go into the highway. *See* 23:30:38.

Exhibit H shows Defendant's second pass from Defendant's camera. It is apparent that Defendant is driving very slowly. It is unclear if this was the pass where the rangers observed him being followed by four cars while driving slowly. The video ends before Defendant arrived to the location of Mr. Brasington's vehicle.

What is clear from the videos and testimony is that the Defendant went to the location of grizzly bear #610 upon hearing of the potential injury to the bear from a vehicle collision. He drove back and forth past the site at a very slow rate of speed and in doing so caused other traffic to slow behind him. He did so for the specific purpose of slowing the traffic in the vicinity of grizzly bear #610 and the cubs. While Defendant believes that his actions were justified based upon his concerns for the safety of the bears, he did in fact obstruct traffic. As testified to by the GTNP employees, they were dealing with what they perceived as a very concerning circumstance and were attempting to address multiple hazards in a way that protected the bears and the motoring public. While Defendant's

concern for grizzly bear #610 and her cubs is understandable, it is the duty and responsibility of GTNP to determine how best to manage public-wildlife encounters within GTNP. Mr. Brasington and Ranger Timm were on-location to address that responsibility on behalf of GTNP. In doing so, they determined that it was in the best interest of all concerned to avoid the development of a bear jam on a busy commercial highway. Defendant's behavior impeded the actions of Mr. Brasington and Ranger Timm in addressing their responsibilities. While some slowing by the traffic upon seeing a vehicle on the side of the roadway is understandable, the speeds driven by Defendant were far below the normal flow of traffic and resulted to buildup of traffic, and potential safety hazard for the public.

### CONCLUSION

It is the finding of this Court that the United States has met its burden of proof, by proving each of the essential elements, of a violation of 23 C.F.R. § 4.13(b), beyond a reasonable doubt and Defendant is now found **GUILTY** of such violation.

This matter is set for sentencing on June 27, 2024 at 11:00 a.m. Parties to appear by video.

Dated this <u>18th</u> day of June, 2024.

Mark L. Carman
United States Magistrate Judge

10